IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00072-NYW-SBP

CARL E. ROQUEMORE III,

    Plaintiff,

v.

EL PASO COUNTY, COLORADO,
DEPUTY T. SMITH,
DEPUTY D. BARR, and
DEPUTY YELTON,

    Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Susan Prose, United States Magistrate Judge**

This matter comes before the court for recommendation on Defendants' Partial Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) and (6), ECF No. 82 (filed February 16, 2024) ("Motion" or "Motion to Dismiss"), in which Defendant El Paso County, Colorado ("El Paso County" or the "County") seeks dismissal of the municipal liability claim brought by Plaintiff Carl E. Roquemore III. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(b), the Order of Reference dated June 28, 2023 (ECF No. 24), and the Memorandum dated February 16, 2024 (ECF No. 83), and concludes that oral argument will not materially assist in the resolution of this matter.

Having carefully reviewed the Motion and associated briefing (ECF Nos. 91, 98), the docket, and the applicable law, this court respectfully **RECOMMENDS** that the Motion to Dismiss be **granted** and the municipal liability claim be **dismissed without prejudice.**

# BACKGROUND[1]

Plaintiff was a pretrial detainee confined at the El Paso County Criminal Justice Center (the "CJC") on August 22, 2022, when he was assaulted by three deputies. Third Amended Prisoner Complaint, ECF No. 86 ("Amended Complaint" or "Am. Compl.") at 5.[2] Sometime before 5:00 a.m., Deputy Smith had told Plaintiff to begin packing his belongings, apparently in anticipation of Plaintiff's being moved to another cell. *Id.* Around 5:00 a.m., Deputy Smith returned to Plaintiff's cell, at which point Plaintiff began packing his things. *Id.* Deputy Smith's purpose, however, was "to ensue confrontation" with Plaintiff and his cellmate—although there are no other allegations concerning Plaintiff's cellmate in the Amended Complaint. Deputy Smith entered the cell with Deputies Barr and Yelton. *Id.* Deputy Yelton yanked Plaintiff's legs out from under him, then Deputy Yelton and Deputy Barr carried Plaintiff out of his cell, stood him up and held him, while Deputy Smith punched him in the face multiple times. *Id.* at 5-6. Plaintiff sustained broken cartilage and a fractured bone near his nose, among other injuries—trauma he asserts has left him "skittish around officers entering his cell." *Id.* at 7.

A lieutenant, along with unidentified "first responders," then arrived on scene, and Plaintiff was carried to a segregation cell and placed in an uncomfortable position. *Id.* at 6. Post use-of-force protocols seem to have been implemented: Plaintiff's face was "cleared" and photographs were taken. *Id.* Deputy Yelton asked if Plaintiff was "alright," and Plaintiff responded by asking if there was a "protocol for punching someone in the face." *Id.* Deputy

---

[1] The court takes as true the following factual allegations, as it must at the motion-to-dismiss stage of the case.

[2] The Amended Complaint originally was docketed at ECF No. 61 at 3-21, then separately docketed at ECF No. 86 pursuant to an order of this court. *See* ECF No. 85.

Yelton denied the existence of such a protocol and informed Plaintiff that, because he was the officer who had control of Plaintiff's legs, he did not see Deputy Smith punching him. *Id.* Throughout the incident, Plaintiff alleges, he "did not resist or provoke officers at any time," *id.* at 7, but he received discipline for assault on staff and was placed in segregation. *Id.* at 11. The deputies involved were exonerated of any misconduct by a CJC review board. *Id.* (deputies "cleared" by the review board).

Plaintiff sues the deputies in their individual capacities pursuant to 42 U.S.C. § 1983 for violating his Eighth and Fourteenth Amendment rights as a pretrial detainee to be free from excessive force. *Id.* at 5-7; *Rowell v. Bd. of Cnty. Commr's of Muskogee Cnty.*, 978 F.3d 1166, 1171 (10th Cir. 2020) (the Fourteenth Amendment's Due Process Clause governs excessive force claims brought by pretrial detainees).[3] He also brings a municipal liability claim against El Paso County pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978), asserting that the incident on August 22, 2022, exemplifies a larger custom and policy of El Paso County CJC officers using unnecessary force against detainees. Am. Compl. at 8-13. Plaintiff seeks declaratory and injunctive relief, as well as various forms of damages. *Id.* at 16 ¶¶ 1-3.

The County moves to dismiss the municipal liability claim, purportedly under both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see* Motion at 1, but it does not argue that subject-matter jurisdiction is lacking and this court discerns no jurisdictional flaw here. Therefore, the court construes the Motion as one seeking dismissal for failure to state a

---

[3] The deputies have answered the Amended Complaint, ECF No. 81, raising qualified immunity, among other defenses.

claim under Rule 12(b)(6) and proceeds to evaluate whether Plaintiff's municipal liability claim can survive a motion to dismiss. For the reasons that follow, the court concludes that it cannot.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). In making this determination, the "court accepts as true all well pleaded factual allegations in a complaint and views those allegations in the light most favorable to the plaintiff." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018).

Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even pro se litigants cannot rely on conclusory, unsubstantiated allegations to survive a Rule 12(b)(6) motion). But "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023) (internal quotation marks omitted, quoting *Twombly*, 550 U.S. at 556), *reh'g en banc denied*, 83 F.4th 1251 (10th Cir. 2023).

In applying the above principles, this court is mindful that Plaintiff proceeds pro se and thus affords his filings a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the court cannot and does not act as his advocate, *Hall*, 935 F.2d at 1110, and applies the same procedural rules and substantive law to him as to a represented party. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2002); *see also Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) ("*Pro se* status 'does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure.'") (quoting *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994)).

## ANALYSIS

Turning then to the chief question—whether the factual allegations in the Amended Complaint are sufficient to state a plausible claim of municipal liability against El Paso County—the court begins by acknowledging the Supreme Court's directive that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Put another way, a "municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. A local government unit instead may be liable for damages under 42 U.S.C. § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or act may fairly be said to represent official policy, inflicts the injury." *Id.*

A municipal policy or custom may take one of the following forms:

(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the

5

> basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks and brackets omitted). Whatever the type of policy or custom alleged,

> [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original); *see also Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) ("In addition to the failure to train and to supervise, other alleged supervisory shortcomings—for instance, failing to adequately screen job applicants—can also constitute an official policy if the plaintiff meets the stringent 'deliberate indifference' standard of fault.") (quoting *Bryan Cnty.*, 520 U.S. at 410; citing *Dodds v. Richardson*, 614 F. 3d 1185, 1212 (10th Cir. 2010) (Tymkovich, J., concurring)).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bryan Cnty.*, 520 U.S. at 410) (internal quotation marks and brackets omitted), as "[a] less stringent standard of fault . . . 'would result in *de facto respondeat superior* liability on municipalities,' *id.* at 62 (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."

*Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). Notice requires "a pattern of tortious conduct." *Id.* And so deliberate indifference "may be found absent a pattern of unconstitutional behavior" only in "a 'narrow range of circumstances'" where "a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction." *Id.* at 1307-08 (quoting *Bryan Cnty.*, 520 U.S. at 409).

Giving the maximum possible credit to Plaintiff's pleading, he attempts to assert municipal liability on four theories: informal custom (including the theory of ratification), failure to train, failure to supervise, failure to investigate, and failure to discipline. *See generally* Am. Compl. at 8-13. For the reasons that follow, the court respectfully finds that Plaintiff's allegations are insufficient plausibly to establish municipal liability under any of those theories.

A.   **Informal Policy or Custom/Ratification**

"[A]n act performed pursuant to a custom that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bryan Cnty.*, 520 U.S. at 404 (internal quotation marks omitted); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). "With informal, unwritten policies, customs, or practices, the plaintiff can plead a pattern of multiple similar instances of misconduct; 'no set number is required, and the more unique the misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible.'" *Arakji v. Hess*, No. 15-cv-00681-CMA, 2015 WL 7755975, at *6 (D. Colo. Dec. 2, 2015) (quoting *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015)).

Plaintiff contends that El Paso County maintained a "custom of deputies regularly

7

assaulting inmates without any repercussions for the deputies." Am. Compl. at 12. He points to six instances of excessive force. *Id.* at 9-10. Two of those instances, however—involving Darren Henry and John Rosa, *id.* at 10—occurred after the incident in which Plaintiff was involved in August 2022. Those incidents therefore cannot show that the County acted with deliberate disregard of a risk that was known or obvious at the time of the alleged assault against Plaintiff. *See, e.g.*, *Waller*, 932 F.3d at 1286 (finding, in affirming dismissal of a municipal liability claim on a Rule 12(b)(6) motion, that "[i]ncidents that occurred subsequent to the incident at issue in this case cannot have provided Denver with notice of a deficiency in its training program before that incident, and thus they cannot be used as evidence that, prior to Deputy Lovingier's use of force against Mr. Waller, Denver 'decisionmakers . . . deliberately chose[ ] a training program that w[ould] cause violations of constitutional rights'") (quoting *Connick*, 563 U.S. at 62, 64 (noting that deliberate indifference generally requires "proof of a *pre-existing* pattern of violations") (emphasis in original)); *Estate of Kowalski v. Shrader*, No. 21-cv-00827-NYW, 2022 WL 19422, at *20 (D. Colo. Jan. 3, 2022) (observing that "[t]he *Waller* court ultimately considered only events pre-dating the alleged constitutional violation in analyzing whether the plaintiff had raised sufficient allegations of a widespread informal custom") (citing *Waller*, 932 F.3d at 1290; emphasis in original).

This leaves Plaintiff to found a municipal liability claim on four other supposedly similar instances of allegedly excessive force:

> **Toney Ellis:** Ellis allegedly was subjected to "unnecessary force" by an unidentified CJC deputy sometime in 2022. Am. Compl. at 9. Ellis, who was being escorted to a segregation cell with his hands cuffed behind his back, was criminally charged with second-degree assault against prison staff—a charge which, Plaintiff

8

alleges, ultimately ended with Ellis's acquittal. *Id.*[4]

**Robert Rainey:** Deputy Smith is alleged to have assaulted Rainey two weeks before the incident involving Plaintiff. *Id.* at 9. Deputy Smith "wrestl[ed] with" the allegedly "already handicapped Rainey," resulting in "fracturing Rainey's arm." *Id.* Rainey was sent to punitive segregation following this incident. *Id.* Deputy Smith was cleared of any wrongdoing by an El Paso County Sheriff's Office review board, but there was "[n]o internal affairs investigation" and "no prosecutorial investigation." *Id.*

**Kontavias Scott:** Sometime in 2022, Scott, a pretrial detainee, was slammed by CJC deputies against a wall and had his dreadlocks "ripped out" while he was handcuffed behind his back. *Id.* Scott was given a disciplinary report for assault on staff but was found not guilty of a disciplinary infraction. *Id.* The deputies were cleared by an El Paso County Sheriff's Office Review Board, "without an internal affairs investigation" or a "prosecutorial investigation." *Id.*

**Matthew Burkess:** Burkess, another pretrial detainee, had a "meltdown" and "grabbed" a CJC deputy sometime in 2022. *Id.* at 10. A deputy that came to the assistance of the "grabbed" deputy repeatedly punched Burkess in the face. *Id.* Burkess was removed from his housing unit "for a small amount of time," but then "brought right back"—allegedly because "the deputies did not follow their own protocol when dealing with a mentally handicapped detainee." *Id.*[5]

---

[4] Publicly-available court databases reflect no acquittal on any criminal charges brought against Ellis in a Colorado court in 2022. *See People v. Ellis*, No. 2022M000902 (El Paso County, Colo., District Court) (charge of obstructing a police officer); *People v. Ellis*, No. 2022M000836 (El Paso County, Colo., District Court) (menacing charge); *see also St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (court may take judicial notice of proceedings in other courts, "both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"). The Registers of Actions in these matters reflect that neither case resulted in an acquittal. In case number 2022M000836, the obstructing-a-police-officer case, Ellis entered into a plea agreement and stipulation for deferred judgment on September 15, 2023, which is now the subject of a pending motion to revoke the deferred sentence, filed March 25, 2024. In case number 2022M000902, the menacing case, Ellis entered into a plea agreement on September 15, 2023.

[5] Plaintiff also references, briefly and with no supporting factual allegations, the "Rodney Eaves case" and a "2016 'fight club'" matter. Am. Compl. at 12. While the County does not address

9

As a preliminary matter, considering the number of allegedly similar prior incidents, standing alone, the court finds that four instances is an insufficient number to constitute a widespread pattern of conduct. *See, e.g.*, *Waller*, 932 F.3d at 1287 (observing that one similar prior incident "does not describe a pattern of violations") (quoting *Coffey v. McKinley Cnty.*, 504 F. App'x 715, 719 (10th Cir. 2013); *citing Martin v. Malhoyt*, 830 F.2d 237, 255 (D.C. Cir. 1987) ("One instance, however egregious, does not a pattern or practice make.")); *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 774 (10th Cir. 2013) (finding that "one other report of non-consensual sexual misconduct" involving a different officer was "not enough to make it obvious to [the police department] that officers were likely to engage in non-consensual sexual conduct"); *Lucio-Vasquez v. City of Aurora*, No. 21-cv-2756-WJM-MDB, 2023 WL 2891009, at *9 (D. Colo. Apr. 11, 2023) (two similar prior instances of excessive force "is simply not enough to show that [defendant] has a practice that is 'so widespread as to have the force of law'") (quoting *Bryan Cnty.*, 520 U.S. at 404; citing *Waller*, 932 F.3d at 1290)); *cf. Andersen v. City of Colo. Springs*, No. 20-cv-02032-RBJ, 2021 WL 8444657, at *4 (D. Colo. Aug. 12, 2021) (eight examples of purportedly unlawful arrests "could indicate that Colorado

---

these assertions in the Motion to Dismiss, the court has independently located a case in which Eaves alleged that the County maintained "an informal custom, policy, or practice of excessive force in CJC and a failure to train or discipline the deputies." *Eaves v. El Paso Cnty.*, No. 16-cv-01065-KLM, 2021 WL 5037485, at *1 (D. Colo. Oct. 19, 2021) (order denying defendants' motion for summary judgment). The Eaves lawsuit, which was settled without being tried to verdict, stemmed from a use-of-force incident that occurred in April 2015, more than seven years before the incident at issue here. *See id.* Even if the court were to consider the Eaves matter, however, it would not change the conclusion that Plaintiff's allegations fail to demonstrate a *widespread* practice of regularly assaulting inmates. *Bryson*, 627 F.3d at 788.

Springs has an informal custom permitting its officers to arrest and detain individuals without a lawful basis for doing do").

But even if the court were to assume that this small number of supposedly similar instances would not, in and of itself, preclude a finding of a "pattern of unconstitutional behavior," *see Barney*, 143 F.3d at 1308, this court nevertheless concludes that Plaintiff's allegations fail to show the existence of a "widespread practice" that is "so permanent and well settled" so as to constitute a custom with the force of law. *Bryson*, 627 F.3d at 788.

First, the use of force against Burkess bears little similarly to the other three incidents or to the use of force against Plaintiff. Burkess triggered a confrontation with CJC deputies by behaving in an aggressive and threatening manner; as Plaintiff puts it, Burkess had a "meltdown" and, as deputies were responding, "grabbed" one of them. Am. Compl. at 12. That one of the responding deputies employed more force than necessary, in Plaintiff's view, to gain control over this volatile situation does not plausibly indicate a pattern of tortious misconduct, nor is such a pattern plausibly inferred from the vague and confusing allegations that the deputies did "not follow their own protocol" and quickly returned Burkess to his housing unit after the incident. *See id.*

Neither is such a pattern plausibly derived from the Ellis example. Indeed, with regard to Ellis, Plaintiff alleges no facts concerning the type of force employed, save to say that it was "unnecessary," *id.* at 11, an unsupported allegation that is "conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. Further, the fact that a district attorney independently assessed the situation and decided to press charges against Ellis for assaulting an officer—irrespective of the fact that Ellis allegedly was not convicted of a crime, a result that may be

11

attributable to issues that have nothing to do with his actual innocence—fails to demonstrate that El Paso County was on notice of "a pattern of *tortious* conduct" on the part of CJC deputies. *Barney*, 143 F.3d at 1307 (emphasis added). If anything, the Ellis incident would have put the County on notice that there was a pattern at the CJC of *deputies* being subject to criminally assaultive behavior at the hands of prisoners, not the other way around.

Construed liberally, Plaintiff's allegations regarding Rainey and Scott, the remaining two exemplars, purport to establish the existence of a policy or custom on a ratification theory. Plaintiff alleges that, after force was used against these detainees, the deputies evaded discipline when they were cleared by a "review board" consisting of "[El Paso Sheriff's Office] county jail[']s own staff." *Id. at* 11 (allegation concerning Rainey); *id.* (same for Scott). The court finds these allegations insufficient to plead a *Monell* claim based on ratification.

"[R]atification is more than acquiescence." *Kowalski*, 2022 WL 19422, at *21 (quoting *Jack v. Cnty. of Stanislaus*, No. 1:17-CV-0520 AWI SAB, 2017 WL 4123930, at *7 (E.D. Cal. Sept. 15, 2017)). The Tenth Circuit has made clear that "a municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's *specific unconstitutional actions*, as well as the basis for these actions." *Bryson*, 627 F.3d at 790 (emphasis added). Plaintiff's conclusory allegations do not meet this standard. He does not allege that the final policymakers for El Paso County ratified the specific actions of Defendants Barr, Yelton, and Smith that are at issue in this case, and the allegation that unidentified "El Paso County policy makers" maintain a "custom of deputies regularly assaulting inmates without any repercussions for the deputies," Am. Compl. at 12, is likewise insufficient to state a *Monell* claim based on ratification. *See Kowalski*, 2022 WL 19422, at *21 ("The Complaint does not allege

that Defendant Shrader ratified the specific actions of Defendants Gonzalez, Bennett, or Taborsky at issue in this case, and the allegations that [Jefferson County Detention Facility] had a policy or practice of 'permitting and acquiescing in its detention officers' disregard of inmate emergencies' is insufficient to state a *Monell* claim based on ratification."); *see also, e.g.*, *Rehberg v. City of Pueblo*, No. 10-cv-00261-LTB-KLM, 2012 WL 1326575, at *7 (D. Colo. Apr. 17, 2012) (finding plaintiff's allegations that "Pueblo" and its "supervisory officers" approved the conduct at issue were insufficient in that they failed to allege that the actual authorized policymaker ratified the conduct); *Tivis v. City of Colorado Springs*, No. 19-cv-00867-KMT, 2020 WL 1166842, at *5 (D. Colo. Mar. 11, 2020) (dismissing *Monell* claim premised on the conclusory allegation that the city had a "formal or informal custom, policy and practice . . . which encourages, condones, tolerates, and ratifies the use of excessive force by its law enforcement officers," and the complaint failed to identify a final policymaker); *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009) (affirming dismissal for failure to allege conduct was approved by official policymaker).

At bottom, Plaintiff's allegations are insufficient to demonstrate a "widespread practice" of regularly assaulting inmates that is causally connected to the injury he claims. *Bryson*, 627 F.3d at 788. The court thus concludes that Plaintiff has not met his pleading burden so as to state a *Monell* claim premised on a theory of an unofficial practice or custom of permitting deputies to engage in gratuitous acts of violence against detainees in the CJC.

### B. Failure to Train

Plaintiff also asserts—albeit in a single sentence[6]—that the County has failed "to

---

[6] The court recognizes that Plaintiff's complaint is less detailed, and perhaps less sophisticated,

13

adequately train, retrain or discipline their employees (deputies)," which in turn has engendered the "custom" of deputies assaulting inmates. The County responds that this allegation is insufficient plausibly to establish *Monell* liability on grounds of failure to train. Motion at 5-6.

The court's analysis begins by recognizing that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61; *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*."). When a *Monell* claim is based on an alleged failure to train, the plaintiff's allegations must "reflect[ ] a 'deliberate' or 'conscious' choice by a [government entity]." *City of Canton*, 489 U.S. at 389. As discussed above, deliberate indifference is a stringent standard that requires a finding that "the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney*, 143 F.3d at 1307. "Policymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Connick*, 563 U.S. at 62 (quoting *Bryan Cnty.*, 520 U.S. at 407). But "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can

---

than one presented in a counseled case, and that his response to the Motion to Dismiss focuses exclusively on his contention that his *Monell* claim should not be dismissed until he has had an opportunity to obtain discovery. *See* ECF No. 91 (response to Motion). However, the court gives Plaintiff's allegations the full credit to which they are entitled and therefore declines to recommend dismissal of the claim on grounds that he presented no "meaningful legal argument" in response to the Motion. *See* ECF No. 98 at 1 (reply).

14

hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* As Chief Judge Brimmer has put it, "[n]otice *of particular deficiencies* in a training program is the crux of a failure-to-train theory[.]" *Est. of Lobato v. Correct Care Sols., LLC*, No. 15-cv-02718-PAB-STV, 2017 WL 1197295, at *7 (D. Colo. Mar. 31, 2017) (emphasis added). Importantly, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Bryan Cnty.*, 520 U.S. at 409).

In this instance, as discussed above, the Amended Complaint does not sufficiently allege a pattern of similar constitutional violations that would have put the County on notice of any deficiency in training policies for CDC deputies. The few incidents delineated in the pleading fail to plausibly demonstrate that the County was on notice of a "pattern of similar constitutional violations" in August 2022, *see Waller*, 932 F.3d at 1285, or that it had reason to be cognizant of the need for more or different training policies with respect to avoiding assaults on inmates.

Nor do the allegations in the Amended Complaint present the "rare" and "narrow range of circumstances" where "a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction," which would allow this court to infer deliberate indifference "without proof of a pre-existing pattern of violations." *Id.* at 1284 (quotations omitted). Here, Plaintiff's allegations do not suffice to show that it was "highly predictable" that "specific or extensive training" would be "necessary for [CJC deputies] to know" that an unprovoked assaulted on a subdued detainee "is inappropriate behavior." *See Schneider*, 717 F.3d at 771, 774 (rejecting municipal liability claim based in on part on the conclusion that it "hardly seems necessary" to train officers in the concept that sexually

assaulting a prisoner is inappropriate behavior) (cleaned up).

As in *Waller*, the conduct at issue here, taking Plaintiff's allegations as true, "did not involve an officer making the wrong call regarding the level of force to employ against an individual who posed a threat to the officer or other individuals or was actively resisting [the officers]." 932 F.3d at 1288. Crediting Plaintiff's allegations, the use of force was improper here

> not because of the amount of force he used, but because no force was warranted in the first place. Even an untrained law enforcement officer should have been well aware that any use of force in this situation . . . was inappropriate. This case does not involve technical knowledge or ambiguous gray areas in the law that would make it highly predictable that [deputies in the position of Defendants Barr, Yelton, and Smith] would need additional specified training to know how to handle the situation correctly. Rather, as in *Schneider* and *Barney*, *specific or extensive training hardly seems necessary, to put [CJC deputies] on notice that they may not violently assault a restrained detainee who is not acting in a threatening manner.*

*Id.* (internal quotation marks and citations omitted, cleaned up) (emphasis added).

Accordingly, Plaintiff's allegations do not plausibly establish either that there was a pattern of prior similar misconduct or that "'the need for more or different training [was otherwise] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [County] can reasonably be said to have been deliberately indifferent to the need.'" *See Schneider*, 717 F.3d at 773 (quoting *City of Canton*, 489 U.S. at 390). The court respectfully rejects Plaintiff's failure-to-train theory of municipal liability.

### C. Failure to Supervise, Investigate, and Discipline

On the failure-to-supervise theory, Plaintiff's allegations are confined to a single sentence: "In almost all instances, there's a lack of supervision and deputies are being unnecessarily violent escalating a situation to physical force." Am. Compl. at 11. But the

assertion that supervision is lacking is conclusory; Plaintiff has not alleged "any *facts* regarding any supposed supervisory deficiencies" in the CJC—"much less any facts describing how" that purportedly inadequate supervision caused Plaintiff's injury. *Waller*, 932 F.3d at 1289 (emphasis added). As the Tenth Circuit has stated, "[r]arely if ever is the failure of a police department to discipline in a specific instance an adequate basis for municipal liability under *Monell*." *Schneider*, 717 F.3d at 777 (internal quotation marks omitted). The well-pleaded facts give this court no reason to conclude that the instant situation is one of those rare circumstances.

      Plaintiff's failure-to-investigate theory similarly lacks the necessary factual support. He asserts that following the uses of force against him, as well as against Rainey and Scott, deputies were not subject to "internal affairs" and "prosecutorial" investigations. Am. Compl. at 9-11. Assuming this to be true (despite Plaintiff not alleging any facts that suggest he would be in possession of such information), the court cannot draw from this assertion any inference of a pattern of investigational deficiencies on the part of the County. Plaintiff has not plausibly alleged that a specific form of investigation is required in a particular case. Neither does it allow this court to infer a "direct causal link" between the mode of investigation employed by the County and a deprivation of his federal rights, *see Bryan Cnty.*, 520 U.S. at 404, or that the investigations Plaintiff thinks should have happened would have yielded a different result from the internal "review board" proceedings. And, as discussed above, Plaintiff's allegations do not suffice to plausibly establish that any County decisionmaking official ratified the conduct of the deputies by means of the review board proceedings. *See, e.g.*, *Rehberg*, 2012 WL 1326575, at *7.

      Finally, the theory that the County caused Plaintiff's injury by failing to properly

discipline prior acts of excessive force, thus creating a custom or policy of tolerating such acts, Am. Compl. at 12, similarly cannot withstand scrutiny under the standards required for pleading a plausible claim for relief. Plaintiff's allegation that the failure to "retrain or discipline" deputies has facilitated a "continuing informal custom of beating detainees," *id.* at 11, is wholly conclusory. Of the two incidents described with some factual specificity where deputies were not disciplined—involving Rainey and Scott—that number is insufficient to plausibly indicate the existence of a widespread custom or policy approving violence against detainees. Although it was Deputy Smith who allegedly punched Rainey two weeks before the incident at issue here, Plaintiff does not allege that Deputy Smith was "cleared" by a review board *before* the incident involving Plaintiff, and "a subsequent failure to discipline cannot be the cause of a prior injury." *Waller*, 932 F.3d at 1290 (citation omitted). On this record, the court cannot conclude that Plaintiff has plausibly alleged "that he was injured by any municipal failure to properly discipline [CDC deputies] for excessive force." *Id.*

      In sum, the allegations concerning municipal liability theories of supervision, investigation, and discipline fail to state a claim for relief that is plausible on their face. Rather, the overarching inference to be drawn from the well-pleaded facts is that Plaintiff was subjected to an unprovoked attack by three deputies whose actions were the product of their own volition and not any County policy.[7]

---

[7] This court, of course, makes no judgment about the truth of Plaintiff's allegations concerning the deputies' actions.

## CONCLUSION

Plaintiff has not plausibly alleged a violation of the Eighth or Fourteenth Amendments against El Paso County. Accordingly, this court respectfully **RECOMMENDS** that Defendants' Partial Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) and (6), ECF No. 82, be **granted** and the municipal liability claim against Defendant El Paso County, Colorado, be **dismissed without prejudice**. *See, e.g.*, *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (recognizing that "ordinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice") (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001)).[8]

DATED: August 21, 2024                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[8] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").